UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**TOWAUN COLEMAN,**

                          **Plaintiff,**

vs.                                               9:18-CV-390
                                                        (MAD/CFH)

**STEVEN RACETTE,** *Superintendent, Clinton Correctional Facility*; **LT. DURKIN,** *Correctional Officer, Clinton Correctional Facility*; **SGT. HUTTI,** *Correctional Officer, Clinton Correctional Facility*; **SGT. KING,** *Correctional Officer, Clinton Correctional Facility*; **JOHN RYELL; WYATT,** *Correctional Officer, Clinton Correctional Facility*; **S. DUBREY,** *Correctional Officer, Clinton Correctional Facilty*; **SPINNER,** *Correctional Officer, Clinton Correctional Facility*; **J. TYLER,** *Correctional*; **WOOD,** *Corrections Sergeant*, **JOHN DOE 1-4,** *Corrections Officers, Clinton Correctional Facility*,

                          **Defendants.**

---

**APPEARANCES:**                              **OF COUNSEL:**

**TOWAUN COLEMAN**
07-A-2215
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York
Plaintiff, *pro se*

**NEW YORK STATE ATTORNEY**         **ERIK BOULE PINSONNAULT, AAG**
**GENERAL – ALBANY**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On April 2, 2018, Plaintiff commenced this action alleging various violations of his constitutional rights and state law. *See* Dkt. No. 1. At all relevant times, Plaintiff was an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). *See* Dkt. No. 31 at ¶ 7. Plaintiff's initial complaint was brought against the following Defendants: Andrew Cuomo ("Defendant Cuomo" or "Governor Cuomo"), New York State DOCCS, Steven Racette ("Defendant Racette" or "Superintendent Racette"), Lieutenant Durkin ("Defendant Durkin"), Sergeant Hutti ("Defendant Hutti"), Sergeant King ("Defendant King"), Reyell ("Defendant Reyell"), Wyatt ("Defendant Wyatt"), S. Dubrey ("Defendant Dubrey"), Spinner ("Defendant Spinner"), J. Tyler ("Defendant Tyler"), John Doe #1, and John Doe #2. *See* Dkt. No. 1 at 8-10. Following an initial review, the Court found that the following claims survived: (1) the Eighth Amendment excessive force and failure to intervene claims against Defendants John Doe #1, John Doe #2, Durkin, Hutti, King, Reyell, Wayatt, Dubrey, and Tyler; and (2) the state law negligence claims against Defendants Racette, John Doe #1, John Doe #2, Durkin, Hutti, King, Reyell, Wyatt, Dubrey, and Tyler. *See* Dkt. No. 5 at 26.

On December 19, 2018, Plaintiff filed an amended complaint. *See* Dkt. No. 31. In his amended complaint, Plaintiff alleges (1) violations of his Eighth, Fourteenth, and First Amendment rights pursuant to 42 U.S.C. § 1983; (2) assault and battery; (3) intentional infliction of emotional distress; (4) negligence; (5) negligent infliction of emotional distress; and (6) respondeat superior. *See id.* at ¶¶ 53-76. The Court conducted a review of the amended complaint and the following claims survived: (1) Plaintiff's First Amendment retaliation claims against Defendants Durkin, John Doe #1, and Wood; (2) Plaintiff's Eighth Amendment excessive force and failure to intervene claims against Defendants John Doe #1-4, Durkin, Hutti, King, Reyell, Wyatt, Dubrey, Tyler, Spinner, and Racette; and (3) Plaintiff's state law negligence claims

2

against Defendants John Doe #1-4, Durkin, Hutti, King, Reyell, Wyatt, Dubrey, Tyler, Spinner, and Racette. *See* Dkt. No. 33 at 16.

Defendants filed a partial motion to dismiss on April 1, 2019. *See* Dkt. No. 44. Defendants Racette, Durkin, King, Hutti, Wyatt, Tyler, and Dubrey move pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for a partial dismissal of the complaint. *See* Dkt. No. 44-1 at 4. Defendants Wood and Spinner move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See id.* Collectively, Defendants seek dismissal of (1) the First Amendment retaliation claim against Defendant Durkin and Wood, (2) all state law claims, and (3) all claims against Defendant Racette. *See id.* at 5. On December 13, 2019, Magistrate Judge Hummel issued a Report-Recommendation and Order, recommending that Defendants' motion to dismiss be granted in part. *See* Dkt. No. 61 at 44. Specifically, Magistrate Judge Hummel recommended that the following claims be dismissed with prejudice: (1) Plaintiff's First Amendment retaliation claims against Defendants Durkin and Wood, (2) the state law negligence claims against all moving Defendants, and (3) the Eighth Amendment supervisory liability claim against Defendant Racette insofar as Plaintiff alleges that Defendant Racette endorsed Governor Cuomo's alleged policy to use "whatever means necessary to obtain information about the escape." *See id.* at 44-45. Presently before the Court is Magistrate Judge Hummel's December 13, 2019 Report-Recommendation and Order, to which Plaintiff has not objected.

## II. BACKGROUND

The incidents alleged occurred immediately following the highly publicized escape of Richard Matt and David Sweat from Clinton Correctional Facility ("Clinton"). *See* Dkt. No. 31 at ¶ 2. Plaintiff alleges that he was an inmate at Clinton leading up to and following the escape. *See id.* at ¶ 7. Following the escape, Plaintiff alleges that Clinton was placed on lock down and many

3

inmates were subjected to physical abuse. *See id.* at ¶¶ 23, 25, 29. Plaintiff alleges that, during a "cell frisk" on June 8, 2015, two unknown corrections officers searched his belongings and read Plaintiff's legal materials relating to a previously filed lawsuit. *See id.* at ¶¶ 30-35. After reading the materials, Plaintiff alleges that Defendants told him that he had too much property and began to throw away his papers. *See id.* at ¶¶ 34-35. When Plaintiff protested to Defendant Hutti, informing the officers that the papers were related to a pending legal matter, Defendant Durkin stated "I don't care . . . throw this shit away before I do." *See id.* at ¶¶ 35-37. Plaintiff then heard another officer state that Plaintiff had been "running his mouth all day." *See id.* at ¶ 38. At that point, Plaintiff alleges that Defendant John Doe #1 approached Plaintiff and struck him in the face. *See id.* at ¶ 39. Plaintiff was then grabbed by a number of officers, carried to the front of the company, and was "savagely beaten" by an unknown number of officers for "what appeared to be a half. . . hour." *See id*. at ¶¶ 39-40.

Plaintiff alleges that after he was beaten, Defendant King told Plaintiff he could be placed back in his cell or taken to another unit and be subject to disciplinary action. *See id.* at ¶ 47. Plaintiff was escorted back to his cell by Defendants King and John Doe #4. *See id.* at ¶ 42. Plaintiff alleges that he attempted to seek medical attention every night, but that the officers denied his request for four days. *See id.* at ¶ 43. Once Plaintiff learned the names of the officers involved in his alleged assault, he formally reported the incident. *See id.* at ¶ 46.

On June 25, 2015, Plaintiff sought medical attention for the injuries he allegedly sustained on June 8, 2015. *See id.* at ¶ 48. When Plaintiff arrived to receive medical attention, a nurse summoned Defendant Wood to take Plaintiff's complaint. *See id.* Plaintiff alleges that Defendant Wood brought him an Inmate Injury Report and told him to write down the events leading to his injury. *See id.* Plaintiff wrote "I was assaulted by C.O.[]s on [June 8, 2015]." *See id.* Plaintiff

4

alleges that when Defendant Wood read the report, he threw the form away and stated "you fucking smart ass." *See id*. Defendant Wood then filled out a new injury report which stated "I was assaulted" and told Plaintiff to sign the form. Following his conversation with Defendant Wood, Plaintiff filed a grievance naming Defendants Durkin, Hutti, King, Reyell, Wyatt, Dubey, Spinner, and Tyler, but stating that he had yet to identify the officer who initially hit him. *See* Dkt. No. 31-1 at 44-48.

## III. DISCUSSION

### A. Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).

5

Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id*. at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id*. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id*. (quoting [*Twombly*, 550 U.S.] at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id*. at 570.

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party declines to file objections or files "[g]eneral or conclusory objections or objections which merely recite the same arguments [presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted); *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007). After the appropriate review, "the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. § 636(b)(1).

B.   **First Amendment Retaliation Claims**

"To prevail on a First Amendment retaliation claim, an inmate must establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the

6

plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action.'" *Holland v. Goord*, 758 F.3d 215, 226 (2d Cir. 2014) (alterations in original and quotation omitted).

### 1. *Defendant Durkin*

Magistrate Judge Hummel found that Defendants are entitled to judgment on the pleadings with respect to Plaintiff's First Amendment retaliation claim against Defendant Durkin. *See* Dkt. No. 61 at 20. While Magistrate Judge Hummel noted that it is unclear whether Plaintiff's verbal protestation of Defendant Durkin's orders to throw away Plaintiff's property should be considered engaging in protected activity, the claim still fails because Plaintiff has not alleged a causal connection between the conduct and the adverse action. *See id.* at 20-24.

"Allegations of adverse actions alone, . . . are insufficient to establish retaliation absent facts supporting an inference of a causal connection between the adverse actions and the protected conduct." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001) (other citation omitted)). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.*

As Magistrate Judge Hummel noted, Plaintiff does not allege that Defendant Durkin engaged in or approved of the search team's alleged assault of Plaintiff. *See* Dkt. No. 61 at 25. Rather, the amended complaint suggests only that Defendant Durkin ordered Plaintiff to throw away his property. *See* Dkt. No. 31 at ¶¶ 35-38. Magistrate Judge Hummel correctly found that Plaintiff failed to allege any statements or actions taken by Defendant Durkin which indicate any retaliatory motive based on Plaintiff's verbal protest. *See* Dkt. No. 61 at 25. Further, Plaintiff's allegations do not suggest that Defendant Durkin read or was familiar with the contents of the

7

documents which Plaintiff claims were related to a previously filed legal matter. *See generally* Dkt. No. 31. Thus, Plaintiff has failed to allege a causal connection between the protected conduct and adverse action. Accordingly, Plaintiff's First Amendment retaliation claim against Defendant Durkin is dismissed.

### 2. *Defendant Wood*

Magistrate Judge Hummel correctly noted that Plaintiff failed to oppose the portion of Defendants' motion regarding his First Amendment retaliation claim against Defendant Wood and recommended that the claim be dismissed as abandoned. *See* Dkt. No. 61 at 27; *see also Heyliger v. West*, No. 9:18-CV-336, 2019 WL 4757334, *4 (N.D.N.Y. Sept. 30, 2019) (noting that a plaintiff's failure to respond to a motion to dismiss a claim is deemed abandonment of that claim) (collecting cases). The Court agrees. However, in the alternative, Magistrate Judge Hummel recommended dismissal of Plaintiff's First Amendment retaliation claim against Defendant Wood for failure to exhaust administrative remedies. *See* Dkt. No. 61 at 28.

The PLRA states that "[no] action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that in order to properly exhaust an inmate's administrative remedies, the inmate must complete the administrative review process in accordance with the applicable state rules. *See Jones v. Bock*, 549 U.S. 199, 218-19 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88-91 (2006)). New York State has a three-step administrative review process. First, a grievance is submitted to the IGRC which reviews and investigates the formal complaint before issuing a written determination. *See* 7 N.Y.C.R.R. § 701.5(b). Second, an adverse decision by the IGRC may be appealed to the Superintendent of the Facility. *See id.* at

§ 701.5(c). Third, an adverse decision by the Superintendent may be appealed to CORC, which makes the final determination within the administrative review process. *See id.* at § 701.5(d). If all three levels of review are exhausted, then the prisoner may seek relief in federal court pursuant to section 1983. *See Bridgeforth v. DSP Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)); *see also Singh v. Goord*, 520 F. Supp. 2d 487, 495-96 (S.D.N.Y. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). To the extent a civil rights claim must be exhausted by the grievance process, completion of the three-tiered process, through and including a final decision by CORC, must be completed before an action asserting that claim may be filed. *See*, *e.g.*, *Casey v. Brockley*, No. 9:13-CV-1271, 2015 WL 8008728, *5 (N.D.N.Y. Nov. 9, 2015).

In the present matter, Magistrate Judge Hummel correctly found that Plaintiff failed to exhaust available administrative remedies. *See* Dkt. No. 61 at 31. Specifically, Plaintiff did not allege that he filed or attempted to file a grievance against Defendant Wood. *See* Dkt. No. 31 at ¶¶ 77-87. A review of the record makes clear that neither the grievance filed by Plaintiff following the alleged assault nor any of the other documentation related to the grievance process makes any mention of Defendant Wood. *See generally* Dkt. No. 31-1. Therefore, Plaintiff's First Amendment retaliation claim against Defendant Wood is dismissed.

**C.     State Law Negligence Claims**

Magistrate Judge Hummel correctly noted that Plaintiff failed to oppose the portion of Defendants' motion regarding Plaintiff's state law negligence claim and recommended that the claim be dismissed as abandoned. *See* Dkt. No. 61 at 34-35; *see also Heyliger*, 2019 WL 4757334, at *4 (collecting cases). However, in the alternative, Magistrate Judge Hummel

9

recommended dismissal of Plaintiff's state law negligence claim against all Defendants as barred by New York Correction Law Section 24. *See* Dkt. No. 61 at 35.

In pertinent part, the New York statute provides as follows:

> No civil action shall be brought in any court of the state . . . against any officer or employee of the department . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

N.Y. Correction Law § 24. An employee's actions are deemed to be within the scope of their employment when "the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions." *Ierardi v. Sisco*, 119 F.3d 183, 187 (2d Cir. 1997) (citations omitted) (quoting *Riviello v. Waldron*, 47 N.Y.2d 297, 302 (1979)).

In the present case, Defendants were, at all relevant times, DOCCS employees. *See* Dkt. No. 31 at ¶¶ 30-53. The alleged conduct occurred during the search of Plaintiff's cell, and thus, within the scope of Defendants' employment. *See id.*; *see also Degrafinreid v. Ricks*, 452 F. Supp. 2d 328, 333 (S.D.N.Y. 2006) (quotation omitted) (holding that "[f]risking inmates and searching their cells for contraband are essential aspects of 'the maintenance of prison safety' and as such are among the 'primary duties and responsibilities of corrections officers'"). Thus, as Magistrate Judge Hummel found, Plaintiff's state law negligence claim is barred by New York Correction Law Section 24. *See* Dkt. No. 61 at 37. Accordingly, Defendants' motion to dismiss Plaintiff's state law negligence claims against all Defendants is granted.

D.   **Eighth Amendment Claim Against Defendant Racette**

With respect to individuals sued because of their capacity as a supervisor, it is well established that supervisors cannot be liable under section 1983 solely by virtue of being a supervisor, "and [liability] cannot rest on respondeat superior." *Richardson v. Goord*, 347 F.3d

10

431, 435 (2d Cir. 2003); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring. *Iqbal v. Hasty*, 490 F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

In *Alexander v. Cuomo*, No. 9:17-CV-309, 2018 WL 2041576, *6 (N.D.N.Y. Feb. 26, 2018) the court held that the plaintiff had sufficiently alleged Superintendent Racette's personal involvement for the purposes of supervisory liability. There, the plaintiff alleged that (1) Superintendent Racette was the policymaker and supervisor of Clinton Correctional Facility at the time of the escape, (2) many other inmates reported similar experiences of abuse, and (3) there was evidence of long-standing brutality against inmates both before and after the escape. *See id*. Similarly, here, Plaintiff has alleged that Defendant Racette was in charge of the operation of Clinton Correctional Facility at the time of the escape, that multiple inmates were subjected to abuse following the escape, and that there is evidence of brutality against inmates leading up to and following the escape. *See* Dkt. No. 31 at ¶¶ 10, 23; Dkt. No. 31-1. Magistrate Judge Hummel correctly noted that Plaintiff, as in *Alexander*, alleges facts which plausibly suggest that Defendant Racette exhibited deliberate indifference by disregarding information indicating that corrections officers were physically assaulting inmates around the time of the escape. *See* Dkt. No. 31 at ¶¶ 23, 29; Dkt. No. 61 at 41. The factual allegations in Plaintiff's complaint, the description of

assaults on other inmates during the time at issue, and the letters from the Correctional Association of New York attached to the complaint give rise to a plausible allegation that Defendant Racette was deliberately indifferent to information indicating that correctional officers physically assaulted inmates before and after the escape. *See generally* Dkt. Nos. 31, 31-1. Further, Plaintiff has plausibly alleged that Defendant Racette failed to take corrective action to prevent the kind of harm that Plaintiff allegedly suffered. *See* Dkt. No. 31-1 at 44-52.

However, to the extent that Plaintiff's allegations of supervisory liability rely upon the theory that Defendant Racette endorsed Governor Cuomo's alleged policy to do "whatever was necessary to obtain information about the escape," Plaintiff's allegations are insufficient. *See* Dkt. No. 31 at ¶ 28. These allegations are conclusory and lack factual support. Therefore, Plaintiff's Eighth Amendment claim based on supervisory liability may proceed to the extent that it is not based on Defendant Racette's endorsement of Governor Cuomo's alleged policy to do "what was necessary to obtain information about the escape." Accordingly, Defendant's motion to dismiss the claims against Defendant Racette is denied as to the Eighth Amendment claim and granted as to the state law negligence claim.

### IV. CONCLUSION

After careful consideration of Magistrate Judge Hummel's Report-Recommendation and Order, the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Hummel's Report-Recommendation and Order (Dkt. No. 61) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Defendants' motion to dismiss (Dkt. No. 44) is **GRANTED in part and DENIED in part**[1]; and the Court further

**ORDERS** that Plaintiff's First Amendment retaliation claims against Defendants Durkin and Wood are **DISMISSED**; and the Court further

**ORDERS** that Plaintiff's New York State law negligence claims against all Defendants are **DISMISSED**; and the Court further

**ORDERS** that Plaintiff's Eighth Amendment claim against Defendant Racette based on supervisory liability is dismissed to the extent that Plaintiff alleges that Defendant Racette endorsed Governor Cuomo's policy to use "whatever means necessary to obtain information about the escape"; and the Court further

**ORDERS** that this action be **TERMINATED** as to Defendant Wood; and the Court

---

[1] Defendants have not moved to dismiss the First Amendment retaliation claims against the John Doe Defendants or the Eighth Amendment excessive force and failure to intervene claims against Defendants John Doe #1-4, Durkin, Hutti, King, Reyell, Wyatt, Tyler, Dubrey, and Spinner. Based on the Court's instant ruling, the following claims remain: (1) Plaintiff's First Amendment retaliation claims against Defendant John Doe #1-4; (2) Plaintiff's Eighth Amendment excessive force and failure to intervene claims against Defendants John Doe #1-4, Durkin, Hutti, King, Reyell, Wyatt, Tyler, Dubrey, and Spinner; and (3) Plaintiff's Eighth Amendment claims based on supervisory liability against Defendant Racette to the extent that his claim is <u>not</u> based on Defendant Racette's alleged endorsement of Governor's Cuomo's policy to "use whatever means necessary to obtain information about the escape."

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.[2]

**IT IS SO ORDERED.**

Dated: February 24, 2020
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

[2] Plaintiff is reminded that he must take reasonable steps through discovery to name and serve the John Doe Defendants, or his claims against them will be dismissed for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. *See* Dkt. No. 61 at 2 n.5.