**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

TOWAUN COLEMAN,

                              Plaintiff,

          v.                                                No. 9:18-CV-0390
                                                            (MAD/CFH)
STEVEN RACETTE, et al.,

                              Defendants.

_____

**APPEARANCES:**                              **OF COUNSEL:**

TOWAUN COLEMAN
Plaintiff pro se
07-A-2215
Southport Correctional Facility
P.O. Box 2000
Pine City, New York 14871

HON. LETITIA JAMES
Attorney General for the                    ERIK BOULE PINSONNAULT, ESQ.
State of New York                            Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for Defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Towaun Coleman ("Coleman" or "Plaintiff"), who was, at all relevant

times, in the custody of Clinton Correctional Facility ("Clinton C.F."), brings this action

pursuant to 42 U.S.C. § 1983 against Defendants, former Superintendent of Clinton C.F.

_____

    [1]  This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C.
§ 636(b) and N.D.N.Y.L.R. 72.3(c).

Steven Racette ("Racette"), Lieutenant Durkin ("Durkin"), Sergeant Hutti ("Hutti"), Sergeant King ("King"), Correctional Officer John Reyell ("Reyell"), Correctional Officer Wyatt ("Wyatt"), Correctional Officer S. Dubrey ("Dubrey"), Correctional Officer Spinner ("Spinner"), Correctional Officer J. Tyler ("Tyler"), Correctional Officer Coryea ("Coryea"), and Correctional Officer Demers ("Demers"), for violations of his constitutional rights under the First and Eighth Amendments.  See Dkt. No. 85 ("Sec. Am. Compl.").

Presently before the Court is Defendants' motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  See Dkt. No. 91.  Coleman opposed Defendants' motion.[2]  See Dkt. No. 98.  For the following reasons, it is recommended that Defendants' motion for partial summary judgment be granted in part and denied in part.

## I. BACKGROUND

In support of the motion, Defendants filed a Statement of Material Facts.[3]  See Dkt. No.

---

[2] Defendants did not submit a reply.

[3] At the filing date of Defendants' motion, Local Rule 7.1(a)(3) provided:

> Any motion for summary judgment shall contain a Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue.  Each fact listed shall set forth a specific citation to the record where the fact is established.  The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.  It does not, however, include attorney's affidavits.  Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.

> The moving party shall also advise pro se litigants about the consequences of their failure to respond to a motion for summary judgment.  See also L.R. 56.2.

91-6.  The facts recited are for the relevant time period as referenced in the Second

Amended Complaint and are related herein in the light most favorable to Coleman as the

nonmoving party.  <u>See</u> subsection II(A) <u>infra</u>.

### A.  Facts[4]

On June 6, 2015, staff at Clinton C.F. discovered that two inmates, Richard Matt and

David Sweat, had escaped from the facility.  Dkt. No. 91-4 at ¶ 5.  As a result, the entire

facility was placed on lockdown  immediately.  Dkt. No. 91-3 at ¶ 4.  At that time, Racette

was the Superintendent at Clinton C.F.  Dkt. No. 91-4 at ¶ 1.

_____

> The opposing party shall file a response to the Statement of Material Facts.  The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises.  <u>The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert</u>.  The non-movant's response may also set forth a short and concise statement of any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs, followed by a specific citation to the record where the fact is established.

Effective January 1, 2021, the rule number was changed to Local Rule 56.1.

Defendants filed a Statement of Material Facts.  Dkt. No. 91-6.  Coleman provided a Statement of Material Facts, but did not respond to Defendants' Statement of Material Facts.  <u>See</u> Dkt. No. 98.  The undersigned is not required to "perform an independent review of the record to find proof of a factual dispute." <u>Prestopnik v. Whelan</u>, 253 F.Supp. 2d 369, 371 (N.D.N.Y. 2003).  Although the Local Rules provide that the Court shall deem admitted any facts the nonmoving party fails to "specifically controvert," <u>pro se</u> plaintiffs are afforded special solicitude in this District and within the Second Circuit.  N.D.N.Y. L.R. 7.1(a)(3); <u>see</u> subsection II.A.  <u>Supra</u>.

[4]  The parties provided exhibits with their submissions, without objection or challenges to the authenticity of any documents. Therefore, to the extent that the "facts" asserted by the parties are supported by the record, the undersigned will consider the facts and relevant exhibits/documents in the context of the within motion.  <u>See</u> <u>Daniel v. Unum Provident Corp.</u>, 261 Fed. App'x 316, 319 (2d Cir. 2008) ("[A] party is not required to authenticate documents on a summary judgment motion where, as here, authenticity is not challenged by the other party").  In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in favor of the non-moving party.  <u>See</u> <u>Terry v. Ashcroft</u>, 336 F.3d 128, 137 (2d Cir. 2003).

3

On June 8, 2015, staff at Clinton C.F. conducted cell frisks throughout the facility, including Coleman's housing location, Upper H Block, 12 Company.[5]  Dkt. No. 91-5 at 35-36.[6]  At the relevant time, Coleman was housed in Cell 15.  Dkt. No. 91-2 at ¶ 6.  Between 8:00 A.M. and 9:00 A.M., Clinton C.F. staff began entering Upper H Block.  Sec. Am. Compl. at ¶ 26.  Durkin supervised the searches that were conducted in the Upper H Block on June 8, 2015.  Dkt. No. 91-3 at ¶¶ 7, 10.

On June 25, 2015, Coleman filed a grievance (CL-67063-15) related to an assault that allegedly occurred on June 8, 2015, in the Upper H Block, 12 Company.  Dkt. No. 91-3 at ¶ 8.  In his grievance, Coleman identified Defendants Durkin, Hutti, King, Reyell, Dubrey, Spinner, Tyler, and Wyatt as "individuals that assaulted [him] or [ ] witnessed the assault."  Dkt. No. 91-3 at 9.  In March 2016, Coleman was transferred out of Clinton C.F., but returned in October 2018.[7]  Dkt. No. 25; Dkt. No. 98-2 at 25.

The remaining record contains few undisputed facts.  Coleman and Defendants disagree on many of the events that transpired on June 8, 2015 and provide conflicting accounts of the circumstances surrounding the incidents.

### 1.  Plaintiff's Version of Events

Coleman claims that Coryea and Demers came to his cell and directed him to step out for a pat frisk.  Dkt. No. 91-5 at 14-18; Sec. Am. Compl. at ¶¶ 27-28.  After the pat frisk,

---

[5]  A cell frisk is a search of the inmate's cell.  Dkt. No. 91-2 at ¶ 5.

[6]  Citations to page numbers refer to the pagination generated by CM/ECF, not the page numbers generated by the parties.

[7]  In March 2016, Coleman was transferred from Clinton C.F. to Green Haven C.F.  See Coleman v. Racette, No. 9:15-CV-0040, Dkt. No. 44 (N.D.N.Y. filed Mar. 31, 2016).

4

Coryea and Demers directed Coleman to "turn around" so that he could observe the search of his cell. Id. Coleman witnessed Coryea reading his phone book while Demers read through Coleman's legal materials; including his "current Federal claim."[8] Dkt. No. 91-5 at 18-20. Coleman overheard Coryea and Demers whispering, and Demers asked Coleman if he was a "rat" or "snitch," meaning a confidential informant. Id. at 20.

Coryea and Demers began "throwing" Coleman's property onto the floor and out of his cell. Dkt. No. 91-5 at 22-23. At that time, Coleman saw Hutti and Durkin walking toward his cell. Id. at 24. Coleman "addressed" Hutti and "inquired" about the items that were being discarded from his cell. Id. at 24-25. While Coleman was speaking with Hutti about his personal property, Durkin asked Coryea and Demers "what's taking [you] so long." Id. at 26. One of the officers responded, "he has too much shit." Dkt. No. 91-5 at 27. Durkin then "yelled" at Coleman, "if you don't throw this shit away, I'm going to throw it away for you." Id.; Sec. Am. Compl. at ¶¶ 35-36. Coleman responded that he "had the amount of property I'm entitled to have by the State of New York. I have no more or no less." Dkt. No. 91-5 at 27. Durkin continued, "I don't care how much property you're entitled to have. If you don't get rid of this shit, we will." Id.

At that time, Coryea stepped out of Coleman's cell and told Durkin, "he's been running his mouth all day" and approached Coleman. Sec. Am. Compl. at ¶ 37; Dkt. No. 91-5 at 27-28. Coleman alleges that Coryea "struck him" in the face, causing him to lose consciousness. Dkt. No. 91-5 at 28-31. When Coleman awoke, he was handcuffed and carried to the front of the housing block by "a number of Correctional Officers." Sec. Am.

---

[8] The claim involved a different correctional officer at Clinton C.F. Sec. Am. Compl. at ¶ 30.

Compl. at ¶ 38.  Coleman was "savagely beaten for what appeared to be a half an hour" by a number of individuals  Id. at ¶ 39; Dkt. No. 91-5 at 30-36.  Coleman heard someone say, "pick him up," and, as he was brought to his feet, Coryea "grabbed a handfull [sic] of Plaintiff's hair, lifted Plaintiff's head from off the floor," "spit in Plaintiff's face" and punched him "one last time with a gloved fist" while yelling racial slurs.  Sec. Am. Compl. at ¶ 40.

### 2.  Defendants' Version of Events

In support of the motion, Defendants proffer declarations from Racette, Durkin, and Demers.  Racette and Durkin claim that Racette was not present during the frisk of Coleman's cell on June 8, 2015.  Dkt. No. 91-4 at ¶ 13; Dkt. No. 91-3 at ¶ 5.  Racette also asserts that he was not responsible for ordering cell frisks and/or searches throughout the facility.  Dkt. No. 91-4 at ¶ 13.

Durkin, who supervised the search of Upper H Block, did not observe any officer using excessive force on Plaintiff.  Dkt. No. 91-3 at ¶¶ 7, 10-11.  Demers claims that he was assigned to frisk cell UH 12/35 ("Cell 35"), which was "20 cells away from Plaintiff's cell." Dkt. No. 91-2 at ¶¶ 7-8.  Demers asserts that he did not frisk Coleman's cell, he did not read Plaintiff's legal papers or phone book, and did not use force on Plaintiff.  Id. at ¶¶ 7, 10-11.  Demers also states that he did not observe any other staff member use force on Plaintiff on June 8, 2015.  Id. at ¶ 12.

### B.  Procedural History

In April 2018, Coleman commenced the within action.  Dkt. No. 1.  In December 2018, Coleman filed an Amended Complaint.  Dkt. No. 31.  Upon review of the Amended Complaint, the Court found that the following claims survived review and required a

6

response: (1) First Amendment retaliation claims against Defendants Durkin, John Doe #1 and Wood; (2) Eighth Amendment excessive force and failure-to-intervene claims against Defendants John Doe #1-4, Durkin, Hutti, King, Reyell, Wyatt, Dubrey, Tyler, Spinner, and Racette; and state law claims against Defendants John Doe #1-4, Durkin, Hutti, King, Reyell, Wyatt, Dubrey, Tyler, Spinner, and Racette. See Dkt. No. 33. Defendants filed Answers to the Amended Complaint (Dkt. Nos. 36, 68) and, in April 2019, Defendants filed a partial motion to dismiss. Dkt. No. 44. In a Memorandum-Decision and Order filed in February 2020, the Court dismissed several claims, including all claims against Wood. Dkt. No. 54.

On June 24, 2020, Coleman field a motion to amend the Amended Complaint. Dkt. No. 77. On August 11, 2020, Coleman appeared at a deposition. Dkt. No. 91-5 at 4. On August 28, 2020, the Court granted Coleman's motion, accepted the Second Amended Complaint (Dkt. No. 85) and ordered Defendants to respond to the following: (1) First Amendment retaliation claims against newly-added defendants Coryea and Demers; (2) Eighth Amendment excessive force and failure to intervene claims against defendants Coryea, Demers, Durkin, Hutti, King, Reyell, Wyatt, Tyler, Dubrey, and Spinner; and (3) Eighth Amendment claims based on supervisory liability against Racette. Dkt. No. 84. On October 13, 2020, Defendants filed an Answer to the Second Amended Complaint. Dkt. No. 88

On October 27, 2020, Defendants filed the within motion pursuant to Fed. R. Civ. P. 56 seeking partial summary judgment: dismissal of all claims against Racette and Demers for lack of personal involvement and dismissal of First Amendment claims against Demers and

Coryea.  See generally Dkt. No. 91.  Coleman opposed the motion.[9]  Dkt. No. 98.

## II.  DISCUSSION

### A.  Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact, it was supported by affidavits or other suitable evidence, and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of demonstrating the absence of disputed material facts by providing the court with portions of pleadings, depositions, and affidavits which support the motion.  FED. R. CIV. P. 56 (c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 317, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party.  Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing a genuine issue for trial. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  For a court to grant a motion for summary judgment, it must be apparent that no rational finder of fact could find in favor of the non-moving party.  Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

---

[9]  In response to the motion for summary judgment, Coleman submitted a Memorandum of Law. Dkt. No. 98-1.  In the submission, Coleman introduces arguments related to the denial of medical attention. See id. at 16.  The Second Amended Complaint does not include a claim related to deliberate medical indifference.  See generally Dkt. No. 85.  Thus, this issue is not properly before this Court and will not be considered.

Where, as here, a party seeks judgment against a <u>pro se</u> litigant, a court must afford

the non-movant special solicitude.  <u>See</u> <u>Triestman v. Federal Bureau of Prisons</u>, 470 F.3d

471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is
> entitled to "special solicitude," . . . that a pro se litigant's submissions
> must be construed "liberally,". . . and that such submissions must be read
> to raise the strongest arguments that they "suggest," . . . .  At the same
> time, our cases have also indicated that we cannot read into pro se
> submissions claims that are not "consistent" with the pro se litigant's
> allegations, . . . or arguments that the submissions themselves do not
> "suggest," . . . that we should not "excuse frivolous or vexatious filings by
> pro se litigants," . . . and that pro se status "does not exempt a party from
> compliance with relevant rules of procedural and substantive law.

<u>Id.</u> (citations and footnote omitted); <u>see</u> <u>also</u> <u>Sealed Plaintiff v. Sealed Defendant</u>, 537 F.3d

185, 191-92 (2d Cir. 2008).

## B.  Eighth Amendment Claims

"The Eighth Amendment requires prison officials to take 'reasonable measures to

guarantee the safety of inmates' in their custody."  <u>Hayes v. New York City Dep't of Corr</u>.,

84 F.3d 614, 620 (2d Cir. 1996) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-33 (1994)).

To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish

both objective and subjective elements.  <u>See</u> <u>Blyden v. Mancusi</u>, 186 F.3d 252, 262 (2d Cir.

1999).  The objective element is "responsive to contemporary standards of decency" and

requires a showing "that the injury actually inflicted [is] sufficiently serious to warrant Eighth

Amendment protection."  <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992) (internal quotation

marks and citation omitted); <u>Blyden</u>, 186 F.3d at 262.

The subjective element requires a plaintiff to demonstrate the "necessary level of

culpability, shown by actions characterized by wantonness." Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000) (internal quotation marks and citations omitted).  Thus, the key inquiry for an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically [to] cause[ ] harm." Hudson, 503 U.S. at 7 (internal quotation marks and citations omitted); see also Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (per curiam) (observing that the Supreme Court has emphasized that the nature of the force applied is the "core judicial inquiry" in excessive force cases—"not whether a certain quantum of injury was sustained.") (internal quotation marks and citation omitted). In assessing whether defendants acted maliciously or wantonly, the Second Circuit has set forth five factors to consider:

> the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.

Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

Similarly, "a state prison guard's deliberate indifference to the consequences of his conduct for those under his control and dependent upon him may support a claim under § 1983." Morales v. New York State Dep't of Corr., 842 F.2d 27, 30 (2d Cir. 1988).  To state a claim for failure to protect under the Eighth Amendment, a plaintiff must demonstrate that (1) he or she was "incarcerated under conditions posing a substantial risk of serious harm," the objective prong; and (2) prison officials acted with deliberate indifference to that risk

10

and the inmate's safety, the subjective prong.  Farmer, 511 U.S. at 834.

As to the objective prong, the deprivation must be "sufficiently serious," Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal quotation marks omitted)), and "contemplate[ ] 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'"  Id. (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990)).  "A substantial risk of serious harm can be demonstrated where there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by plaintiff regarding the altercation or a request by plaintiff to be separated from the attacker."  Gilmore v. Rivera, No. 13-CV-6955, 2014 WL 1998227, at *3 (S.D.N.Y. May 14, 2014); see Rivers v. Spinnella, No. 9:09-CV-309 (FJS/RFT), 2010 WL 6428486, at *5 (N.D.N.Y. Nov. 4, 2010) (granting the defendants' motion for summary judgment where "there [were] no specific facts, nor even allegations, that indicate the [the d]efendant was aware that [the p]laintiff faced a substantial risk of serious harm until the altercation had already started.").[10]

As to the subjective prong, the plaintiff must demonstrate that prison officials actually knew of and disregarded an excessive risk of harm to the inmate's health and safety.  See Farmer, 511 U.S. at 837.  The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Id.  The plaintiff must "show that the defendants actually inferred from that disclosure that a substantial risk of serious harm existed."  Murray v. Goord, 668 F.

---

[10]  Copies of the unpublished decisions cited within this Report-Recommendation & Order have been provided to plaintiff pro se.

Supp.2d 344, 359 (N.D.N.Y. 2009).  A prison official's negligence does not amount to a constitutional violation.  See Hathaway, 37 F.3d at 66.

### 1.  Claims Against Racette

"It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct.  Polk Cnty. v. Dodson, 454 U.S. 312, 325 (1981); Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003); Wright, 21 F.3d at 501.  Thus, supervisory officials may not be held liable merely because they held a position of authority.  Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).  Before deciding Ashcroft v. Iqbal, 556 U.S. 62 (2009), the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.  See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citing Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986)).

In Tangreti v. Bachmann, 983 F.3d 609 (2d Cir. 2020), the Second Circuit addressed

12

how the Supreme Court's decision in Iqbal affected the standards in Colon for establishing

supervisory liability.  Consistent with other circuits, the Court concluded that "there is no

special rule for supervisory liability," and held that a "plaintiff must plead and prove 'that

each Government-official defendant, through the official's own individual actions, had

violated the Constitution.'"  Id. at 618.  Therefore, to avoid summary judgment, the plaintiff

had to establish that the defendant violated the Eighth Amendment by her "own conduct,

not by reason of [her] supervision of others who committed the violation" and could not "rely

on a separate test of liability specific to supervisors."  Id. at 619.

It is undisputed that Racette was not present during the search of Coleman's cell in the

Upper H Block on June 8, 2015.  Dkt. No. 91-3 at ¶ 5; Dkt. No. 91-4 at ¶ 13.  Racette

asserts, and Coleman does not dispute, that he did not see any staff use excessive force

on any inmates between June 6, 2015, and June 28, 2015.  Dkt. No. 91-4 at ¶ 12.  As

Coleman does not provide evidence that Racette was present at the time of the alleged

assault, the Eighth Amendment excessive force claim against Racette must be dismissed.

See Tangreti, 983 F.3d at 619; see also Celestin v. Angeletta, No. 19 CV 1887, 2021 WL

1062344, at *4 (S.D.N.Y. Mar. 19, 2021) (dismissing the plaintiff's excessive force claim

against the captain because the plaintiff "does not connect Captain [ ] to the purported

assault"); Forbes v. Doe, No. 6:18-CV-06700, 2021 WL 810020, at *3 (W.D.N.Y. Mar. 3,

2021) (dismissing claims against employee of Monroe County Sheriff's Department

because the plaintiff failed to allege that employee was involved in searches or the use of

excessive force against the plaintiff).

With respect to the failure-to-protect claim, Coleman alleges that Racette was

13

personally involved in the constitutional violations because he was aware of Coleman's "many complaints of threats and harassment from the staff at Clinton." See Dkt. No. 98-1 at 9, 2, 12, 17.  As support, Coleman relies upon a DOCCS' computer-generated list of grievances entitled "Closed Cases."  Dkt. No. 98-2 at 3.  The list includes four grievances: one he filed at Auburn Correctional Facility in December 2010 and three he filed at Clinton C.F. in April 2015, July 2015, and March 2016.  Dkt. No. 98-2.  The July 2015 grievance relates to the events that transpired on June 8, 2015, and the March 2016 grievance was relates to medical treatment.  Id.  The April 2015 grievance involves verbal harassment by an unidentified "C.O. at Clinton C.F.  Id.  The grievance was "reviewed by" Chris M. Vanbergen and "authorized" by Jeffrey A. Hale.  Id.  The named defendants, including Racette, are not referenced anywhere in the document.  Id.

Coleman also contends that Racette was aware of his prior complaints related to harassment and threats at Clinton C.F. because Racette was a defendant in his "prior 1983 claim."  Dkt. No. 98-1 at 12-13.  Specifically, Coleman refers to a civil rights complaint he filed in this District in January 2015.  See Coleman v. Racette, et al., No. 9:15-CV-0040 (TJM/ATB), Dkt. No. 1 (N.D.N.Y. filed on Jan. 14, 2015) ("Coleman I").  In Coleman I, Plaintiff asserted First and Eighth Amendment claims against Racette and Clinton Correctional Officer L. Nolan related to an alleged excessive force incident that he alleged occurred in December 2014.  Id., Dkt. Nos. 19, 21.  In lieu of an answer, the defendants filed a motion to dismiss.  Id., Dkt. No. 28.  On January 4, 2016, the Court dismissed all

14

claims against Racette for failure to plead personal involvement.[11]  Coleman I, Dkt. No. 38.

Upon review of the record in the instant action, including the list of grievances, and, taking judicial notice of Coleman I, the Court addresses the objective and subjective standards of an Eighth Amendment failure-to-protect claim.  As to the first prong – whether plaintiff established that he was incarcerated under conditions posing a substantial risk of serious harm – Coleman provides proof of general allegations of prior verbal harassment and accusations of excessive force against a Clinton C.F. officer not involved with the June 2015 incident.  Coleman did not file any grievances or complaints against the officers purportedly involved in the June 2015 incident.  Moreover, Coleman does not allege that he had prior altercations or any kind of history with the named defendants.  In fact, Coleman testified that he never saw Coryea or Demers before June 8, 2015.  Dkt. No. 91-5 at 14.  As such, the evidence presented does not support the conclusion that Coleman faced a substantial risk of serious harm from the named defendants.

As to the second prong – whether plaintiff established that Racette acted with the necessary state of mind – the Court notes that Eighth Amendment failure to protect claims cannot be based on a defendant's knowledge of a "general risk" of harm to an inmate.  See, e.g., Hogan v. Fischer, No. 09-CV-6225, 2012 WL 4845609, at *6 (W.D.N.Y. Oct. 10, 2012) (internal citation omitted) (holding that the failure to protect the plaintiff from a general threat of harm is insufficient to raise a failure-to-protect claim under the Eighth Amendment) vacated in part on other grounds 738 F.3d 509 (2d. Cir. 2013).  Here, nothing in the record

---

[11]  On November 27, 2018, Coleman I was resolved with a Stipulation and Order of Discontinuance. See Coleman I, Dkt. No. 114.

suggests that Racette acted with deliberate indifference.  Even assuming that Racette was aware of Coleman's April 2015 grievance and <u>Coleman I</u>, prior to June 8, 2015,[12] the complaints set forth therein did not involve the named defendants, physical assault, or threats of physical violence.  Thus, Coleman has failed to show that Racette knew that Coleman was under the threat of harm and had the opportunity to prevent such harm.  <u>See</u> <u>Farmer</u>, 511 U.S. at 829.

As Coleman has failed to show that he faced a "substantial risk of harm" from the named defendants, and that Racette failed to protect Coleman from future harm by the defendants, it is recommended that Defendants' partial motion for summary judgment and dismissal of the failure-to-protect claims against Racette be granted.  <u>See</u>, <u>e.g.</u>, <u>Boyd v. Petralis</u>, No. 6:16-CV-06286, 2021 WL 1100395, at *6 (W.D.N.Y. Mar. 23, 2021) (dismissing failure-to-protect claims based upon <u>Tangreti</u> and lack of evidence that the defendants were aware of the plaintiff's fear of an attack or any prior complaints against the deputies until after the incident); <u>see</u> <u>also</u> <u>Brown v. Annucci</u>, No. 19 CV 9048, 2021 WL 860189, at *5 (S.D.N.Y. Mar. 8, 2021) ("Aside from a general reference to records of misusing force, plaintiff pleads no facts suggesting [defendants] consciously or recklessly disregarded a serious risk of harm certain correction officers allegedly posed to plaintiff.") (internal quotation marks and citations omitted).

Accordingly, it is recommended that the Eighth Amendment claims against Racette be dismissed and that Defendants' motion for summary judgment be granted.

---

[12]  Racette was not served with the summons and amended complaint in <u>Coleman I</u> until July 28, 2015, after the alleged use of force on June 8, 2015.  <u>Coleman I</u>, Dkt. Nos. 23, 26

**2.  Claim Against Demers**

Defendants argue that the Eighth Amendment claim against Demers must be dismissed for lack of personal involvement because Coleman cannot recollect who was involved in the alleged excessive force incident and did not identify Demers as one of the attackers.  Dkt. No 91-1 at 17-18.

"A plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene." Munoz v. Martinez, No. 03 CIV. 0828, 2005 WL 1355094, at *4 (S.D.N.Y. June 8, 2005) (citation omitted); see Alexander v. Racette, 9:17-CV-309 (BKS/CFH), 2020 WL 5802273, at *11 (holding that, the fact that the plaintiff could not identify with certainty who was involved in the assault was not fatal where the plaintiff presented evidence that his assaulter was wearing a CIU jacket without a name tag but that he had a bag over his head for much of the assault, combined with evidence that a defendant may have worn his CIU jacket on the day in question "raise[d] a triable issue of fact as to whether [the defendant] was personally involved" was the individual involved in questioning the plaintiff and in the assault).  "This is especially true where the acts complained of by the plaintiff, if true, (e.g., mace to the eyes, standing on back, 'mushing' face into the ground) are likely to have prevented plaintiff from identifying which of three defendant officers specifically engaged in the bad acts." Shankle v. Andreone, No. 06-CV-487, 2009 WL 3111761, at *5 (E.D.N.Y. Sept. 25, 2009).

Here, Coleman testified that, at the time of the cell search, he was not able to identify the officers because they were not wearing name tags.  See Dkt. No. 91-5 at 14, 20.  With assistance, Coleman was later able to identify the officers as Coryea and Demers.  Id. at

20-22; Dkt. No. 98-1 at 19-20. Coleman further testified that, although he saw Coryea hit him, he could not identify all of the officers involved in the assault because he was "stomped on" while he was "face down" on his stomach and "in and out of consciousness." Dkt. No. 91-5 at 33-35. Although Coleman cannot affirmatively state which officers participated in the physical assault, he testified that Demers was "present for the incident on June 8th when 2015, when [he] was punched and kicked and stomped [on.]" Id. at 33, 38, 40-42.

Conversely, Demers avers that he was assigned to search Cell 35, twenty cells away from Coleman's cell and that he did not "strike Plaintiff or otherwise use force" on Coleman. Dkt. No. 91-2 at ¶¶ 8, 11. Demers provided a Cell Frisk Sheet which, he contends, supports his position that he searched Cell 35 and Coryea searched Cell 15.[13] Dkt. No. 91-2 at ¶ 4, pp. 5-6. Demers claims that if he had searched Coleman's cell on June 8, 2015, he would have put his name on the cell frisk sheet and signed the form. Id. at ¶ 9.

The competing evidence rests on the credibility of Coleman on one hand and Demers on the other.[14] In these circumstances, the governing law that the evidence must be viewed in the light most favorable to the non-moving party requires the Court to credit Coleman's version of the events for purposes of this motion. See In re Dana Corp., 574 F.3d 128, 152 (2d Cir. 2009) (holding that a court faced with a motion for summary judgment must draw all

---

[13] Demers stated that the Cell Frisk Sheet is dated June 18, 2015. Dkt. No. 91-2 at ¶ 4. Based upon a review of the document, which is dated June 8, 2015, it is clear that Demers' declaration contains a typographical error in relation to the date.

[14] Although the record contains a declaration from Durkin, who admits he was present in Upper H Block on June 8, 2015, Durkin does not confirm, refute, or address Demers' claim that he was not personally involved in the alleged use of force.

18

reasonable inferences in favor of the non-moving party and may not make credibility determinations or weigh the evidence, functions which are reserved to a jury and not a judge) (citing cases).

Thus, although Coleman acknowledges that he is unable to identify which of the defendants exerted what force upon him, he has proffered sufficient evidence to raise an issue of material fact as to Demers' personal involvement to require resolution by a trier of fact. Accordingly, it is recommended that Defendants' motion on this ground be denied.

### C. Retaliation Claims

In order to establish a First Amendment retaliation claim under Section 1983, a prisoner must show the following: that "(1) . . . the speech or conduct at issue was protected, (2) . . . the defendant took adverse action against the plaintiff, and (3) . . . there was a causal connection between the protected speech and the adverse action." Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks and citations omitted). "[P]risoner retaliation claims are easily fabricated, and . . . pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks and citations omitted). Accordingly, the Second Circuit requires courts to "examine prisoners' claims of retaliation with skepticism and particular care." Colon, 58 F.3d at 872.

Here, Defendants do not dispute that Coleman allegedly suffered an adverse action to satisfy the second prong of the retaliation claim. Rather, Defendants argue that Coleman's retaliation claims against Demers and Coryea are subject to dismissal because Coleman "failed to explain the nature of his protected speech supporting his First Amendment claim"

19

against Demers and Coryea.  Dkt. No. 91-1 at 19.  Moreover, Defendants contend that the record lacks evidence demonstrating a causal connection between the protected conduct and the alleged adverse action, the alleged excessive force incident.  Dkt. No. 91-1 at 19-20.

It is well settled that the filing of administrative grievances and lawsuits constitutes protected speech.  See Davis v. Goord, 320 F.3d 346, 352-53 (2d Cir. 2003) ("[T]he filing of prison grievances is a constitutionally protected activity"); Williams v. Ingraham, No. 04-CV-257 (GLS/DRH), 2005 WL 3746222, at *2 (N.D.N.Y. Feb. 3, 2005) ("The [inmate's] conduct at issue—complaints to judicial officials, filing a lawsuit, and grievances—are clearly constitutionally protected rights.") (citing Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002)).

As to the third element, the plaintiff bears the burden of establishing that causal connection "sufficient to support the inference 'that the speech played a substantial part' in the [ ] adverse [ ] action."  Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir. 2000) (quoting Ezekwo v. NYC Health & Hosps. Corp., 940 F.2d 775, 780-81 (2d Cir.1991)).  A plaintiff may establish a causal connection "with circumstantial evidence if it is 'sufficiently compelling[.]' "  Kotler v. Donelli, 382 F. App'x 56, 57-58 (2d Cir. 2010) (summary order) (quoting Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003)).

> In determining whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his

20

motivation.

Baskerville v. Blot, 224 F.Supp.2d 723, 732 (S.D.N.Y. 2002).

### 1. Retaliation Claims Based upon "Many Grievances"

Coleman claims that Demers and Coryea were motivated to retaliate against him because they were aware of his "many grievances[.]" Dkt. No. 98-1 at 26. However, this conclusory claim, submitted for the first time in opposition to the motion for summary judgment, is not supported by competent, admissible evidence. As discussed supra, the record lacks facts establishing that Coleman filed grievances or complaints against Demers or Coryea prior to the June 2015 incident. Indeed, Coleman has not proffered any evidence establishing that Demers or Coryea were aware that Coleman filed any grievances prior to the June 2015 incident. Accordingly, Coleman has not established a viable retaliation claim based upon his generalized contention that Defendants were aware of his filing "many grievances." Id.

### 2. Retaliation Claims Based upon Coleman I

Defendants concede that the filing of lawsuit is constitutionally protected activity.[15] Dkt. No. 91-1 at 19. Although Defendants' Memorandum of Law lacks any argument in support of dismissal of Coleman's retaliation claims based upon Coleman I, Coleman bears the burden of demonstrating that "the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff." Gayle, 313 F.3d at 682. In this regard, Coleman relies upon the "close proximity in time" between his protected conduct

---

[15] In the December 2019 Report-Recommendation and Order, this Court concluded that Coleman engaged in protected conduct when he filed Coleman I. Dkt. No. 61 at 24.

and the adverse action.  See Dkt. No. 98-1 at 26.

It is well-settled that "temporal proximity without more is insufficient to survive summary judgment."  Flynn v. Ward, No. 15-CV-1028 (TJM/CFH), 2018 WL 3195095, at *11 (N.D.N.Y. June 7, 2018) (internal quotation marks and citation omitted).  Instead, a plaintiff must come forward with additional "circumstantial evidence" establishing that the protected activity was "a substantial or motivating factor" in the defendant's conduct.  See id. at *10.  Retaliation is not "reasonably inferred" where a plaintiff's protected speech does not involve the defendant alleged to have retaliated against him.  See Wright v. Goord, 554 F.3d 255, 274 (2d Cir. 2009)).  "Retaliation claims have been dismissed when they are supported only by conclusory allegations that the retaliation was based upon complaints against another officer."  Jones v. Fischer, No. 9:10-CV-1331 (GLS/ATB), 2013 WL 5441353, at *21 (N.D.N.Y. Sept. 27, 2013) (citing Hare v. Hayden, 09 Civ. 3135, 2011 WL 1453789, at *4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant.")).

Coleman testified that Demers and Coryea "grabbed" his legal work and began reading through his "claim against another correctional officer within that facility."  Dkt. No. 91-5 at 18-19.  Coleman overheard Defendants "whispering amongst themselves[,]" and although he admits that he "could not make out nor hear what they were whispering about," the assault occurred "shortly thereafter."  Id. at 22; Dkt. No. 98-1 at 28.

As discussed, Coryea and Demers were not named defendants in Coleman I.  Even assuming the truth of Coleman's claim that Demers read Coleman's legal materials, the record lacks evidence demonstrating that Demers or Coryea were motivated to retaliate

22

against Coleman based on Coleman's filing of that lawsuit. Coleman has not proffered any explanation as to why Coryea or Demers would be motivated to retaliate against him in response to a lawsuit against Nolan. Coleman does not allege, and the record does not support, a conclusion that Demers or Coryea made any reference to the lawsuit, Nolan, or the December 2014 incident referenced in Coleman I prior to the alleged assault. Coleman's conclusory and speculative allegations are insufficient to support "an inference of a causal connection between" the protected conduct; i.e. filing Coleman I, and the alleged excessive force incident. See Baskerville, 224 F.Supp.2d at 732.

As there is an absence of factual support to demonstrate a causal connection, Coleman's retaliation claims against Demers and Coryea, based upon Coleman I, lack merit. Celotex Corp., 477 U.S. at 323.

### 3. Retaliation Claims Based Upon Oral Complaints

Construing Coleman's arguments in a light most favorable to him, Coleman asserts that Defendants were motivated to retaliate against him after overhearing his conversations with Hutti and Durkin. Dkt. No. 98-1 at 25. Defendants argue that the verbal exchanges between Coleman, Hutti, and Durkin were "brief and isolated" and cannot be construed as constitutionally-protected speech. Dkt. No. 91-1 at 20.

A prisoner does not have a First Amendment right to engage officers in a verbal dispute. See Torrez v. Mulligan, No. 3:17-CV-677, 2017 WL 2623165, at *3 (D. Conn. June 16, 2017) (dismissing retaliation claim against officer who allegedly assaulted the plaintiff immediately after the plaintiff told the defendant to "stop making inappropriate comments"). However, district courts in the Second Circuit have concluded that an inmate's oral

complaints to a correctional officer, under some circumstances, may constitute speech or conduct protected under the First Amendment.  See, e.g., Mazyck v. Keller, 6:20_CV-06055, 2021 WL 1201224, at *8 (W.D.N.Y. Mar. 31, 2021) (finding that the plaintiff "plausibly alleged that he engaged in protected activity for purposes of his First Amendment claim" where the plaintiff alleged to have verbally reported an assault by a correctional officer to a supervisor, and as a result, faced retaliation); Smith v. Woods, No. 03-CV-480 (DNH), 2006 WL 1133247, at *10 (N.D.N.Y. Apr. 24, 2006) (noting that "the First Amendment protects, not only the filing of written grievances and complaints, but under some circumstances, the making of oral complaints to correction officers.") aff'd, 219 F. App'x 110 (2d Cir. 2007) (summary order) (citation omitted); Sprau v. Coughlin, 997 F.Supp. 390, 393 (W.D.N.Y. 1998) (finding a prisoner's threat to file a complaint against a prison guard sufficient to establish protected activity); but see Booker v. Griffin, No. 16-CV-00072, 2018 WL 1614346, at *17 (S.D.N.Y. Mar. 31, 2018) (dismissing First Amendment claims against correctional officers on the basis of qualified immunity "because the law is not well-settled regarding whether an inmate's verbal complaint constitutes protected speech, it would not necessarily be 'clear to a reasonable officer' that taking an adverse action in response to such a complaint would rise to the level of a constitutional violation.") (internal citation omitted).

Although the Second Circuit has yet to articulate a bright line rule regarding constitutionally-protected oral speech by an inmate, several district courts in this Circuit have held that a verbal confrontation with a correction officer based on an inmate's dissatisfaction with that officer's directive is one example of speech that is not

constitutionally-protected activity.  See Williams v. Smith, No. 11-CV-0601 (LEK/TWD),

2015 WL 1179339, at *10 (N.D.N.Y. Mar. 13, 2015) (verbal complaint "about problems with

[inmate's] braces" was not protected conduct); Carl v. Griffin, No. 08-CV-4981, 2011 WL

723553, at *5 (S.D.N.Y. Mar. 2, 2011) ("[The p]laintiff's brief and isolated verbal [encounter

with the defendant] does not constitute protected First Amendment speech [because] [t]o

construe it as such would elevate every verbal exchange between a prison employee and a

prisoner to the level of protected speech under the First Amendment.") (internal quotation

marks and citation omitted); see also Lugo v. Van Orden, No. 07-CV-879 (TJM/GJD), 2008

WL 2884925, at *3 n.4 (N.D.N.Y. July 23, 2008) ("A simple discussion with a corrections

officer would not be protected speech unless that discussion was in the form of a complaint

or concern about the officer or some policy involved.").

In his grievance, Coleman described his verbal exchange with Hutti as a "conversation"

about his property.  Dkt. No. 91-5 at 25.  During his deposition, Coleman testified that while

Demers and Coryea were "throwing stuff out of [his] cell," he "started addressing" Hutti and

"started inquiring about the items that these two officers had discarded from [his] cell as

rubbish."  Dkt. No. 91-5 at 25-26.  Coleman summarized his exchange with Hutti:

> A.   Basically, there was a particular item that was
> discarded from my cell which was a property bag is,
> you know, a bag they sell on commissary that allows
> inmates to - - to store items in this property bag to
> create space in your cell.
>
> So Sergeant Coryea was the one who discarded this
> bag from out of my cell, so I asked - - asked - - asked
> Sergeant Hutti - - I didn't ask him.  I stated to Sergeant
> Hutti that this officer was discarding property that I'm
> entitled to have.  And I would like to know if I could

retrieve it, because I'm entitled to have this.

Dkt. No. 91-5 at 26-27.

Coleman does not allege that he voiced any complaints to Hutti and does not describe the exchange with Hutti as argumentative.  In his grievance, Coleman claimed that Durkin "yelled" at him, but Coleman described his tone to Durkin as "respectful." Dkt. No. 1-1 at 43.  During his deposition, Coleman testified that while he was speaking with Hutti, Durkin interrupted and "started yelling in [his] face[.]" Dkt. No. 91-5 at 27.  Durkin told Coleman, "if you don't throw this shit away, I'm going to throw it away for you."  Id.  Coleman testified that he responded:

> A.    At that time, I interjected, and I stated to Lieutenant Derkin [sic] that I had a lot of amount [sic] of property that I'm entitled to have by the State of New York.  I have no more or no less.  At that time, he started yelling back in my face again, saying I don't care how much property you're entitled to have.  If you don't get rid of this shit we will."

Dkt. No. 91-5 at 27.

Based upon Coleman's sworn testimony and the record before the Court, Coleman did not intend for his statements regarding the manner in which his property was handled to "reach anyone" other than Hutti and Durkin.  See Carl, 2011 WL 723553, at *5.  The record suggests that the verbal exchanges were, at best, "isolated" disagreements related to the cell search that day.  There is no evidence that the parties engaged in any further conversations or arguments regarding these issues.  Accordingly, the Court concludes that the oral exchanges between Coleman and Hutti and Coleman and Durkin were not verbal grievances or protected conduct.  See Cosby v. McDonald, No. 3:20-CV-432, 2020 WL

5026550, at *6 (D. Conn. Aug. 25, 2020) (finding that there is a distinction between "verbal grievances and verbal confrontations or arguments between a prisoner and a correctional officer and [district courts] have concluded that the latter do not constitute protected speech") (collecting cases); see also Ford v. Martuscello, No. 9:14-CV-1566 (DNH/DEP), 2016 WL 5322166, at *4 (N.D.N.Y. June 23, 2016) (confronting a corrections officer based on a dissatisfaction with that officer's directive is one example of speech that is not constitutionally-protected activity), report and recommendation adopted, 2016 WL 5256901 (N.D.N.Y. Sept. 22, 2016) (citations omitted).

Accordingly, it is recommended that Defendants' motion for summary judgment and dismissal of Coleman's First Amendment retaliation claims against Coryea and Demers be granted.

### III.  CONCLUSION

**WHEREFORE**, for the reasons set forth above, it is hereby:

**RECOMMENDED**, that Defendants' motion for partial summary judgment (Dkt. No. 91) be **GRANTED** as to Plaintiff's claims against Racette and Plaintiff's First Amendment retaliation claims against Demers and Coryea; and **DENIED** in all other respects; and it is

**ORDERED**, that copies of this Report-Recommendation and Order be served on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN**

27

**FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. <u>Roldan v. Racette</u>, 984 F.2d

85, 89 (2d Cir. 1993) (citing <u>Small v. Secretary of Health and Human Servs.</u>, 892 F.2d 15

(2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.[16]

Dated: May 27, 2021
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[16]    If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. <u>Id.</u> § 6(a)(1)(c).